UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIGI PALESTINI, DARLA PALESTINI,<br><br>　　　　　　　　　　　　Plaintiffs,<br>vs.<br><br>HOMECOMINGS FINANCIAL, LLC, et al.,<br><br>　　　　　　　　　　　　Defendants. | CASE NO. 10CV1049-MMA<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. No. 3] |

　　　　Defendants Homecomings Financial LLC ("Homecomings") and GMAC Mortgage LLC ("GMAC") (collectively "Defendants") bring a motion to dismiss Plaintiffs' Complaint. (Doc. No. 3.) Plaintiffs Luigi and Darla Palestini ("Plaintiffs") oppose the motion. (Doc. No. 10.) The Court, in its discretion, finds the matter suitable for resolution without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss.

## BACKGROUND

　　　　This action arises from foreclosure-related events with respect to Plaintiffs' home. Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations of the complaint in question. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976).

　　　　In October 2005, Plaintiffs purchased a home, located at 9715 Hinsdale Street, Santee, California, 92071. (*Compl.* at ¶ 7.) To finance the purchase, Plaintiffs obtained a loan through Defendant GMAC. On October 21, 2005, the loan was memorialized in an adjustable rate mortgage

1  note and secured by a Deed of Trust ("DOT") recorded against the property. (*Id.*)  Defendant GMAC
2  also provided Plaintiffs with a Truth in Lending Act ("TILA") disclosure stating their adjustable
3  interest rate was set at 7.375% per annum, with a scheduled rate adjustment in November 2007. (*Id.*)
4  On December 1, 2005, Plaintiffs received a letter informing them Defendant Homecomings would be
5  servicing their loan and directing them to make subsequent payments to Homecomings.  Plaintiffs
6  allege the letter stated that the transfer of servicing would not affect the terms of the original mortgage
7  documents. (*Id.* at ¶ 8.)

8       In October 2007, Plaintiffs decided to refinance their loan before the scheduled interest rate
9  increase in November 2007.  Plaintiffs allege they requested documents from Defendant
10  Homecomings, but Homecomings refused and, instead, demanded $4,200—three months of loan
11  payments and an additional $600—before refinancing the loan.[1]  (*Id.* at ¶ 9.)  Plaintiffs allege they
12  complied with Defendant Homecomings' request but did not understand the charges.  From October
13  2007 through March 2008, Plaintiffs assert they were "bombarded with unexplained fees and
14  charges," including force-placed insurance, multiple Speedpay fees, property inspection fees, late fees,
15  and foreclosure fees.  (*Id.* at ¶¶ 10, 24.)  As a result of these improper charges, Plaintiffs allege that
16  on November 7, 2007, First American, the loan trustee, filed a Notice of Default and Election to Sell
17  Under Deed of Trust without their knowledge and without providing them notice. (*Id.* at ¶ 10.)

18       On or about May 19, 2008, Plaintiffs received a notice to vacate, which informed them the
19  house would be sold in a trustee's sale and instructed them to vacate within three days.  Plaintiffs
20  allege the notice to vacate was the first document ever notifying them of the default and foreclosure
21  status of their loan.  (*Id.* at ¶ 10.)  Accompanying the notice, Plaintiffs received a Cash-for-Keys
22  Settlement Offer from Defendant Homecomings, which indicated they could avoid an eviction
23  judgment by turning over possession of the home to Defendant.  Plaintiffs allege they immediately
24  contacted Defendant Homecomings to remedy the situation, and Homecomings requested Plaintiffs
25  pay $300,000 within one week to avoid foreclosure.  Plaintiffs assert that despite transferring the
26  requested funds on May 28, 2008, Plaintiffs' home was sold to US Bank National Association in a

---

[1] Throughout their Complaint, Plaintiffs assert, generally, that they contacted Defendant Homecomings to request documents. Plaintiffs never indicate when such requests were made or what documents they requested.

foreclosure sale, and they were served with an unlawful detainer suit in July 2008. *(Id.* at ¶¶ 70–71.)

Plaintiffs filed the instant Complaint on January 29, 2010, in California state court. Defendants subsequently removed the action to this Court on May 14, 2010 (Doc. No. 1.), and moved to dismiss Plaintiffs' claims on May 21, 2010. (Doc. No. 3.)

## LEGAL STANDARD

A complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009). Moreover, it is improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). Accordingly, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft*, *supra*, 129 S. Ct. at 1950.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

## DISCUSSION

**A.  Federal Claims**

In their fourteenth and fifteenth causes of action, Plaintiffs allege Defendants violated federal statutes, the Truth in Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA"). The Court considers the propriety of these two claims first, as its jurisdiction is premised

on the alleged TILA and RESPA violations. Plaintiffs' remaining thirteen causes of action are based on state law.

*1.     Truth in Lending Act ("TILA")*

Plaintiffs allege that Defendants violated TILA by failing to accurately disclose improper fees in their variable rate adjustment disclosure notices. Plaintiffs allege that as a result of these improper fees, Defendants' TILA disclosures stated inaccurate loan balances in violation of Regulation Z, 12 C.F.R. § 226. (*Compl.* at ¶ 175.) Plaintiffs request damages and a declaratory judgment against Defendants to remedy the alleged TILA violations. (*Id.* at ¶ 176.) Defendants seek to dismiss Plaintiffs' TILA claim as they are factually insufficient and untimely.

A claim for damages under TILA must be brought within one year of "the date of the occurrence of the violation." *See* 15 U.S.C. § 1640(e). The one-year period commences when the loan documents are signed, provided there is no undisclosed credit term or fraudulent concealment that prevented discovery of the claim. *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003). Here, Plaintiff closed on the loan on October 21, 2005, but did not file a claim until January 29, 2010—more than four years later. (*Compl.* at ¶ 7.)

Although the one-year statute of limitations has passed, Plaintiffs contend they are entitled to equitable tolling. The Ninth Circuit has held that in TILA damages cases, "equitable tolling might be appropriate in certain circumstances." *King v. State of California*, 784 F.2d 910, 914 (9th Cir. 1986). Where applicable, the doctrine of equitable tolling suspends the statute of limitations "until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *Id.* at 915. To invoke equitable tolling, a plaintiff must allege facts to support a finding of delayed discovery or a lack of opportunity to discover. *Myvett v. Litton Loan Servicing*, 2010 U.S. Dist. LEXIS 18753, at *7 (N.D. Cal. Mar. 3, 2010). "Under *Twombly*, that factual basis may not be merely speculative, but must be plausible on its face." *Distor v. US Bank NA*, 2009 U.S. Dist. LEXIS 98361, at *11 (N.D. Cal. Oct. 22, 2009) (internal quotations omitted).

Plaintiffs argue the equitable tolling doctrine is applicable because their "Complaint alleges fraudulent concealment of TILA violations by virtue of the knowingly inaccurate disclosure notices." (*Pls. Opp'n* at 7:3–4.) Plaintiffs' Complaint, however, fails to assert facts to support allegations of

1  fraudulent concealment or delayed discovery to justify tolling the statute of limitations. Even
2  assuming Plaintiffs' may amend their pleading to allege fraudulent concealment properly, the statute
3  of limitations may be tolled, at best, to May 2008, when Plaintiffs received the eviction notice from
4  Defendant Homecomings. (*Compl*. at ¶ 68.) "Where equitable tolling may be applicable to a federal
5  claim, the 'claim accrues . . . upon awareness of the actual injury, not upon awareness that this injury
6  constitutes a legal wrong.'" *Allen v. United Fin. Mortg. Corp*., 2010 U.S. Dist. LEXIS 26503, at *4
7  (N.D. Cal. Mar. 22, 2010) (quoting *Lukovsky v. San Francisco*, 535 F.3d 1044, 1049 (9th Cir. 2008)).
8  Under the facts alleged in Plaintiffs' Complaint, they would be unable to claim ignorance as to their
9  injury or Defendants' actions after receiving the eviction notice on May 19, 2008. Based on this fact,
10 even if the Court applied equitable tolling in this instance, Plaintiffs' claim would be time-barred as
11 of May 19, 2009. Therefore, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' fourteenth
12 cause of action **with prejudice**.

13        *2.        Real Estate Settlement Procedures Act ("RESPA")*

14        As a preliminary matter, Plaintiffs allege four RESPA claims in their fifteenth cause of action.
15 Plaintiffs concede dismissal is proper with respect to their claims under Sections 2603 and 2604.
16 (*Pls.' Opp'n* at 7:13–14.) Plaintiffs and Defendants agree, as does the Court, there is no private right
17 of action under either provision for Defendants' alleged failure to provide accurate disclosures, good
18 faith estimates, or settlement statements. *Collins v. FMHA-USDA*, 105 F.3d 1366, 1368 (11th Cir.
19 1997) (holding there is no private right of action for violations of 12 U.S.C. § 2604); *see also Ambriz*
20 *v. Quality Loan Serv. Corp.*, 2010 U.S. Dist. LEXIS 50074, at *11 (S.D. Cal. May 20, 2010); *Bloom*
21 *v. Martin*, 865 F. Supp. 1377, 1383-1385 (N.D. Cal. 1994) (holding there is no private remedy for
22 violations of 12 U.S.C. § 2603). The Court addresses Plaintiffs' two remaining RESPA claims in turn.
23        Plaintiff alleges Defendants violated Section 2607 of RESPA by providing or receiving
24 kickbacks and charging for services they did not actually perform. (*Compl*. at ¶ 33.) Defendants
25 contend that, like Plaintiffs' TILA claim, their RESPA claim is also time-barred. Section 2607 of
26 RESPA has a one-year statute of limitations that runs "from the date of the occurrence of the
27 violation." 12 U.S.C. § 2614. Like TILA claims, courts consider the "occurrence of the violation"
28 to be the date the loan closed. *See Ayala v. World Sav. Bank*, *FSB*, 616 F. Supp. 2d 1007, 1020 (C.D.

Cal. 2009); *Jensen v. Quality Loan Serv. Corp.*, 2010 U.S. Dist. LEXIS 26647, at *27 (E.D. Cal. Mar. 19, 2010) (quoting *Snow v. First Am. Title Ins., Co.*, 332 F.3d 356, 359–60 (5th Cir. 2003)). Absent equitable tolling, Plaintiffs' RESPA claim expired on October 21, 2006—one year after they signed the loan documents. As with their TILA claim, Plaintiffs argue equitable tolling applies to their RESPA claim. (*Pls.' Opp'n* at 8:28–9:1.)  For the reasons stated above, the Court finds no basis to apply equitable tolling to Plaintiffs' RESPA claim. Plaintiffs have failed to allege a factual basis to justify tolling their RESPA claim. Accordingly, the Court **DISMISSES** Plaintiffs' claim under Section 2607 of RESPA **with prejudice**.

Plaintiffs also allege Defendants violated Section 2605 of RESPA by failing to respond to their qualified written requests. Section 2605(e)(1)(B) defines "qualified written request" as:

> [A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that–
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

Although Plaintiffs frequently allege throughout their Complaint that they contacted, called, or corresponded with Defendant Homecomings, Plaintiffs fail to identify a specific instance in which they sent a *written* request to Homecomings. (*Compl.* at ¶¶ 8, 9, 18, 57, 92.) Further, Plaintiffs' opposition provides the Court no indication they could successfully amend this claim if given an opportunity to do so. Plaintiffs' opposition merely states that their "Complaint repeatedly sets forth that the Plaintiffs corresponded with Defendants." (*Pls.' Opp'n* at 9:8–9.)  Their opposition fails to indicate what facts Plaintiffs could allege to establish that they sent a proper written request to Homecomings. Without such facts, Plaintiffs' allegations do not state a claim for relief under Section 2605(e)(1)(B). Because the Court concludes that any further effort to amend this claim would be futile, the Court **DISMISSES** Plaintiffs' RESPA claim under Section 2605 claim **with prejudice**. Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' fifteenth cause of action **with prejudice**.

///

**B.     State Law Claims**

The court has dismissed all of the claims relating to the federal questions upon which the Court's jurisdiction is predicated. When the court's jurisdiction is initially premised on a federal question, the court may decline to exercise supplemental jurisdiction over state law claims if no independent basis for subject matter jurisdiction exists after the dismissal of the federal claims. 28 U.S.C. § 1367(c)(3); *Osborn v. Haley*, 549 U.S. 225, 245 (2007) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350–51 (1988)). The decision whether to retain or dismiss state claims after dismissal of all federal claims is fully discretionary. *Schneider v. TRW, Inc.*, 938 F.2d 986, 993–94 (9th Cir. 1991). In the usual case where federal claims are dismissed before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state law claims. *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1995); *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994). Accordingly, the Court declines to exercise its discretion to retain the state law claims and **DISMISSES** those claims **without prejudice**.

### CONCLUSION

For the reasons stated herein, the Court hereby **GRANTS** Defendants' motion to dismiss. (Doc. No. 3.) Plaintiffs' fourteenth and fifteenth causes of action for TILA and RESPA violations are **DISMISSED with prejudice**, and Plaintiffs' remaining thirteen causes of action are **DISMISSED without prejudice**. The Clerk of Court shall terminate the case.

**IT IS SO ORDERED**.

DATED: July 20, 2010

*/s/ Michael M. Anello*

Hon. Michael M. Anello
United States District Judge