# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIGI PALESTINI, DARLA PALESTINI, | CASE NO. 10CV1049-MMA |
| Plaintiffs, | **AMENDED ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |
| vs. | |
| HOMECOMINGS FINANCIAL, LLC, et al., | [Doc. No. 3] |
| Defendants. | |

Defendants Homecomings Financial LLC ("Homecomings") and GMAC Mortgage LLC ("GMAC") (collectively "Defendants") bring a motion to dismiss Plaintiffs' Complaint. (Doc. No. 3.) Plaintiffs Luigi and Darla Palestini ("Plaintiffs") oppose the motion. (Doc. No. 10.) The Court, in its discretion, finds the matter suitable for resolution without oral argument. *See* Fed. R. Civ. P. 78(b).[1]  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

///
///

---

[1] This is an amended order. On August 10, 2010, the Court granted Defendants' motion for reconsideration. (Doc. No. 22.) The Court's prior order declined to exercise supplemental jurisdiction over Plaintiffs' state law claims. (Doc. No. 16.) The Court granted Defendants' motion after determining that diversity jurisdiction pursuant to 28 U.S.C. § 1332 existed such that the Court should have exercised jurisdiction over Plaintiffs' state law claims.

## BACKGROUND

This action arises from foreclosure-related events with respect to Plaintiffs' home. Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations of the complaint in question. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976).

In October 2005, Plaintiffs purchased a home, located at 9715 Hinsdale Street, Santee, California, 92071. (*Compl.* at ¶ 7.) To finance the purchase, Plaintiffs obtained a loan through Defendant GMAC. On October 21, 2005, the loan was memorialized in an adjustable rate mortgage note and secured by a Deed of Trust ("DOT") recorded against the property. (*Id.*) Defendant GMAC also provided Plaintiffs with a Truth in Lending Act ("TILA") disclosure stating their adjustable interest rate was set at 7.375% per annum, with a scheduled rate adjustment in November 2007. (*Id.*) On December 1, 2005, Plaintiffs received a letter informing them Defendant Homecomings would be servicing their loan and directing them to make subsequent payments to Homecomings. Plaintiffs allege the letter stated that the transfer of servicing would not affect the terms of the original mortgage documents. (*Id.* at ¶ 8.)

In October 2007, Plaintiffs decided to refinance their loan before the scheduled interest rate increase in November 2007. Plaintiffs allege they requested documents from Defendant Homecomings, but Homecomings refused and, instead, demanded $4,200—three months of loan payments and an additional $600—before refinancing the loan.[2] (*Id.* at ¶ 9.) Plaintiffs allege they complied with Defendant Homecomings' request but did not understand the charges. From October 2007 through March 2008, Plaintiffs assert they were "bombarded with unexplained fees and charges," including force-placed insurance, multiple Speedpay fees, property inspection fees, late fees, and foreclosure fees. (*Id.* at ¶¶ 10, 24.) As a result of these improper charges, Plaintiffs allege that on November 7, 2007, First American, the loan trustee, filed a Notice of Default and Election to Sell Under Deed of Trust without their knowledge and without providing them notice. (*Id.* at ¶ 10.)

On or about May 19, 2008, Plaintiffs received a notice to vacate, which informed them the house would be sold in a trustee's sale and instructed them to vacate within three days. Plaintiffs

---

[2] Throughout their Complaint, Plaintiffs assert, generally, that they contacted Defendant Homecomings to request documents. Plaintiffs never indicate when such requests were made or what documents they requested.

allege the notice to vacate was the first document ever notifying them of the default and foreclosure status of their loan. (*Id.* at ¶ 10.) Accompanying the notice, Plaintiffs received a Cash-for-Keys Settlement Offer from Defendant Homecomings, which indicated they could avoid an eviction judgment by turning over possession of the home to Defendant. Plaintiffs allege they immediately contacted Defendant Homecomings to remedy the situation, and Homecomings requested Plaintiffs pay $300,000 within one week to avoid foreclosure. Plaintiffs assert that despite transferring the requested funds to Homecomings on May 28, 2008, Plaintiffs' home was sold to US Bank National Association in a foreclosure sale, and they were served with an unlawful detainer suit in July 2008. *(Id.* at ¶¶ 70–71.) Plaintiffs filed the instant Complaint on January 29, 2010, in California state court. Defendants subsequently removed the action to this Court on May 14, 2010 (Doc. No. 1.), and moved to dismiss Plaintiffs' claims on May 21, 2010. (Doc. No. 3.)

## **LEGAL STANDARD**

A complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009). Moreover, it is improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged."*Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). Accordingly, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft*, *supra*, 129 S. Ct. at 1950.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with'

1  a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to
2  relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

## DISCUSSION

### I. Liability of GMAC Mortgage

As a preliminary matter, Defendants assert that Plaintiffs fail to attribute any of the wrongful conduct against Defendant GMAC Mortgage. (*Defs.' Mot. to Dismiss* at 6:24–7:14.) In their Complaint, Plaintiffs assert that they are "informed and believe, and thereon allege, that GMAC has assumed ownership and control of Homecomings and is liable for Homecomings' acts and omissions as a successor in interest." (*Compl.* at ¶ 4.) Plaintiffs then go on to allege that "Defendant GMAC, as the original lender and contracting party with Plaintiffs, cannot escape liability by simply contracting with Homecomings, or any other companies, for servicing of the loan they originated." (*Id.*) Plaintiffs' allegations that GMAC has assumed "ownership and control" over Homecomings appear to be based on pure speculation and do not appear to be based on facts. But the Complaint clearly alleges that Homecomings was hired by GMAC to service Plaintiffs' loan for the benefit of GMAC. This is enough to support an agency theory of liability. Because Plaintiffs have alleged enough to infer an agency relationship between GMAC and Homecomings such that GMAC could be held liable for the acts of the servicer, the Court **DENIES** Defendants' motion to dismiss all claims against GMAC.

### II. Federal Claims

In their fourteenth and fifteenth causes of action, Plaintiffs allege Defendants violated federal statutes, the Truth in Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA"). Plaintiffs' remaining thirteen causes of action are based on state law.

*1.     Truth in Lending Act ("TILA")*

Plaintiffs allege that Defendants violated TILA by failing to accurately disclose improper fees in their variable rate adjustment disclosure notices. Plaintiffs allege that as a result of these improper fees, Defendants' TILA disclosures stated inaccurate loan balances in violation of Regulation Z, 12 C.F.R. § 226. (*Compl.* at ¶ 175.) Plaintiffs request damages and a declaratory judgment against Defendants to remedy the alleged TILA violations. (*Id.* at ¶ 176.) Defendants seek to dismiss Plaintiffs' TILA claim as they are factually insufficient and untimely.

A claim for damages under TILA must be brought within one year of "the date of the occurrence of the violation." *See* 15 U.S.C. § 1640(e). The one-year period commences when the loan documents are signed, provided there is no undisclosed credit term or fraudulent concealment that prevented discovery of the claim. *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003). Here, Plaintiff closed on the loan on October 21, 2005, but did not file a claim until January 29, 2010—more than four years later. (*Compl.* at ¶ 7.)

Although the one-year statute of limitations has passed, Plaintiffs contend they are entitled to equitable tolling. The Ninth Circuit has held that in TILA damages cases, "equitable tolling might be appropriate in certain circumstances." *King v. State of California*, 784 F.2d 910, 914 (9th Cir. 1986). Where applicable, the doctrine of equitable tolling suspends the statute of limitations "until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *Id.* at 915. To invoke equitable tolling, a plaintiff must allege facts to support a finding of delayed discovery or a lack of opportunity to discover. *Myvett v. Litton Loan Servicing*, 2010 U.S. Dist. LEXIS 18753, at *7 (N.D. Cal. Mar. 3, 2010). "Under *Twombly*, that factual basis may not be merely speculative, but must be plausible on its face." *Distor v. US Bank NA*, 2009 U.S. Dist. LEXIS 98361, at *11 (N.D. Cal. Oct. 22, 2009) (internal quotations omitted).

Plaintiffs argue the equitable tolling doctrine is applicable because their "Complaint alleges fraudulent concealment of TILA violations by virtue of the knowingly inaccurate disclosure notices." (*Pls. Opp'n* at 7:3–4.) Plaintiffs' Complaint, however, fails to assert facts to support allegations of fraudulent concealment or delayed discovery to justify tolling the statute of limitations. Even assuming Plaintiffs' may amend their pleading to allege fraudulent concealment properly, the statute of limitations may be tolled, at best, to May 2008, when Plaintiffs received the eviction notice from Defendant Homecomings. (*Compl.* at ¶ 68.) "Where equitable tolling may be applicable to a federal claim, the 'claim accrues . . . upon awareness of the actual injury, not upon awareness that this injury constitutes a legal wrong.'" *Allen v. United Fin. Mortg. Corp.*, 2010 U.S. Dist. LEXIS 26503, at *4 (N.D. Cal. Mar. 22, 2010) (quoting *Lukovsky v. San Francisco*, 535 F.3d 1044, 1049 (9th Cir. 2008)). Under the facts alleged in Plaintiffs' Complaint, they would be unable to claim ignorance as to their injury or Defendants' actions after receiving the eviction notice on May 19, 2008. Based on this fact,

1  even if the Court applied equitable tolling in this instance, Plaintiffs' claim would be time-barred as
2  of May 19, 2009. Therefore, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' fourteenth
3  cause of action **with prejudice**.

   *2. Real Estate Settlement Procedures Act ("RESPA")*

As a preliminary matter, Plaintiffs allege four RESPA claims in their fifteenth cause of action. Plaintiffs concede dismissal is proper with respect to their claims under Sections 2603 and 2604. (*Pls.' Opp'n* at 7:13–14.) Plaintiffs and Defendants agree, as does the Court, there is no private right of action under either provision for Defendants' alleged failure to provide accurate disclosures, good faith estimates, or settlement statements. *Collins v. FMHA-USDA*, 105 F.3d 1366, 1368 (11th Cir. 1997) (holding there is no private right of action for violations of 12 U.S.C. § 2604); *see also Ambriz v. Quality Loan Serv. Corp.*, 2010 U.S. Dist. LEXIS 50074, at *11 (S.D. Cal. May 20, 2010); *Bloom v. Martin*, 865 F. Supp. 1377, 1383-1385 (N.D. Cal. 1994) (holding there is no private remedy for violations of 12 U.S.C. § 2603). The Court addresses Plaintiffs' two remaining RESPA claims in turn.

Plaintiff alleges Defendants violated Section 2607 of RESPA by providing or receiving kickbacks and charging for services they did not actually perform. (*Compl*. at ¶ 33.) Defendants contend that, like Plaintiffs' TILA claim, their RESPA claim is also time-barred. Section 2607 of RESPA has a one-year statute of limitations that runs "from the date of the occurrence of the violation." 12 U.S.C. § 2614. Like TILA claims, courts consider the "occurrence of the violation" to be the date the loan closed. *See Ayala v. World Sav. Bank*, *FSB*, 616 F. Supp. 2d 1007, 1020 (C.D. Cal. 2009); *Jensen v. Quality Loan Serv. Corp.*, 2010 U.S. Dist. LEXIS 26647, at *27 (E.D. Cal. Mar. 19, 2010) (quoting *Snow v. First Am. Title Ins., Co.*, 332 F.3d 356, 359–60 (5th Cir. 2003)). Absent equitable tolling, Plaintiffs' RESPA claim expired on October 21, 2006—one year after they signed the loan documents. As with their TILA claim, Plaintiffs argue equitable tolling applies to their RESPA claim. (*Pls.' Opp'n* at 8:28–9:1.) For the reasons stated above, the Court finds no basis to apply equitable tolling to Plaintiffs' RESPA claim. Plaintiffs have failed to allege a factual basis to justify tolling their RESPA claim. Accordingly, the Court **DISMISSES** Plaintiffs' claim under Section 2607 of RESPA **with prejudice**.

///

Plaintiffs also allege Defendants violated Section 2605 of RESPA by failing to respond to their qualified written requests. Section 2605(e)(1)(B) defines "qualified written request" as:

> [A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that–
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

Although Plaintiffs frequently allege throughout their Complaint that they contacted, called, or corresponded with Defendant Homecomings, Plaintiffs fail to identify a specific instance in which they sent a *written* request to Homecomings. (*Compl.* at ¶¶ 8, 9, 18, 57, 92.) Further, Plaintiffs' opposition provides the Court no indication they could successfully amend this claim if given an opportunity to do so. Plaintiffs' opposition merely states that their "Complaint repeatedly sets forth that the Plaintiffs corresponded with Defendants." (*Pls.' Opp'n* at 9:8–9.) Their opposition fails to indicate what facts Plaintiffs could allege to establish that they sent a proper written request to Homecomings. Without such facts, Plaintiffs' allegations do not state a claim for relief under Section 2605(e)(1)(B). Because the Court concludes that any further effort to amend this claim would be futile, the Court **DISMISSES** Plaintiffs' RESPA claim under Section 2605 claim **with prejudice**. Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' fifteenth cause of action **with prejudice**.

### B. State Law Claims

#### 1. Breach of Fiduciary Duty

Plaintiffs' thirteenth cause of action asserts that Defendants breached their fiduciary duty to Plaintiffs. Specifically, Plaintiffs allege that Homecomings was acting as escrowee for their escrow account when it failed to properly allocate money from the escrow account. (*Compl.* at ¶¶163–169.) Defendants contend that this claim should be dismissed because GMAC as a financial institution and Homecomings as a loan servicer had no fiduciary duty to Plaintiffs. (*Defs.' Mot. to Dismiss* at 7:15–8:23.) In support of their position that Defendants had such a duty, Plaintiffs rely on decisions from other circuits applying laws of states other than California. But it is well-established under California law that "a financial institution owes no duty of care to a borrower when the institution's

involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991) (citation omitted). Courts have since extended this well-established rule to loan servicers who do not exceed their conventional roles as a loan servicer. *See Gumbs v. Litton Loan Servicing*, 2010 U.S. Dist. LEXIS 47890, at *15 (E.D. Cal. May 13, 2010); *Banks v. HomEq Servicing*, 2010 U.S. Dist. LEXIS 25428, at *9 (S. D. Cal. March 18, 2010); *Huerta v. Ocwen Loan Servicing, Inc.*, 2010 U.S. Dist LEXIS 17970, at *11 (N.D. Cal. March 1, 2010). The Court finds no facts to support finding that Defendants were action in any role other than their conventional roles. Because a claim for breach of fiduciary duty requires the existence of a legal duty to exercise reasonable care or to act as a fiduciary, and Defendants had no such duty, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' claim for breach of fiduciary duty **with prejudice**. *See Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998).

### 2. *Intentional Infliction of Emotional Distress*

In their sixth cause of action, Plaintiffs allege that Defendants' conduct amounts to intentional infliction of emotional distress ("IIED"). (*Compl.* at ¶¶121–125.) In order to state a claim for intentional infliction of emotional distress, a plaintiff must allege facts that demonstrate: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the outrageous conduct." *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991). In order to be considered "extreme or outrageous," the conduct must exceed "all bounds usually tolerated by a decent society." *Agarwal v. Johnson*, 25 Cal.3d 932, 946 (1979). For emotional distress to be severe, it must be "of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." *Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 397 (1970). Finally, the defendant "must have engaged in 'conduct intended to inflict injury or engaged in with the realization that injury will result.'" *Id.* (quoting *Davidson v. City of Westminister*, 32 Cal. 3d 197, 209 (1982)).

Defendants assert that Plaintiffs' claim fails because Plaintiffs have failed to allege facts that

Defendants' conduct was "extreme and outrageous" or that Plaintiffs suffered "severe emotional distress." (*Defs.' Mot. to Dismiss* at 14:10–16:1.) Defendants also assert that their conduct was absolutely privileged because they took the actions alleged in furtherance of collecting a debt. (*Id.*) In their opposition, Plaintiffs contend that the conduct alleged in the complaint is outrageous and that they adequately alleged severe emotional distress. (*Pls.' Opp'n* at 9:23–10:27.) Plaintiffs also assert that Homecomings's conduct was not absolutely privileged because "the conduct of the Defendants, at a minimum, raises the question of whether their 'debt collection' was done in good faith." (*Id.* at 10:28–11:10.)

Plaintiffs' IIED claim is premised on the alleged fact that Homecomings "routinely imposed servicing abuses including force-placed insurance, improperly assessed late fees, property inspection fees and Speedpay fees that were never contemplated by the original loan documents." (*Compl.* at ¶ 122.) Plaintiffs also assert that they never received notice of their default or the impending foreclosure. (*Id.*)

As an initial matter, the Court agrees that Defendants conduct in foreclosing on Plaintiffs' property is absolutely privileged. "In the context of debt collection, courts have recognized that the attempted collection of a debt by its very nature often causes the debtor to suffer emotional distress." *Ross v. Creel Printing & Publ'g Co.*, 100 Cal. App. 4th 736, 745 (2002) (citing *Bundren v. Sup. Court*, 145 Cal. App. 3d 784, 789 (1983)). While Plaintiffs assert that the facts alleged raise the question of whether Homecomings acted in good faith, the Court disagrees. There are simply no facts to suggest that Homecomings acted with the intent to harm Plaintiffs or that Homecomings otherwise acted in bad faith. Plaintiffs' assertions to the contrary are based on mere speculation. Second, the other conduct alleged by Plaintiffs is simply not the sort of conduct that can be considered "extreme and outrageous." Even accepting Plaintiffs' allegations as true, the assessment of fees and other alleged servicing errors cannot be said to be outside "all bounds usually tolerated by a decent society."

Finally, the Court notes that Plaintiffs' allegations of "severe emotional distress" are conclusory and fail to comply with the requirements of *Twombly* and *Iqbal*. Plaintiffs assert that they are not required to allege any injuries to support their claim because it would be tantamount to requiring an evidentiary showing. (*Pls.' Opp.* 10:4–6.) This argument is without merit. While

1  Plaintiffs are not required to present evidence of such injuries, they are required to allege what injuries
2  they have suffered to support their conclusion that their injuries were "severe." Plaintiffs' conclusory
3  allegations that they "suffered severe emotional distress" is just the sort of "formulaic recitation of the
4  elements" that is no longer sufficient to state a claim for relief. *See Iqbal*, *supra*, 129 S.Ct. at 1949.
5  For these reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' IIED claim **with**
6  **leave to amend**.

### 3. *Negligent Infliction of Emotional Distress*

Negligent infliction of emotional distress ("NIED") is not considered an independent tort, but rather is derived from the tort of negligence. *Marlene F. v. Affiliated Psychiatrict Medical Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989). Thus, all of the same elements of a negligence cause of action must be established in order for a claim of negligent infliction of emotional distress to withstand a motion to dismiss. Furthermore, a plaintiff may only recover under an NIED cause of action if "damages for serious emotional distress are sought as a result of a breach of duty owed the plaintiff that is 'assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two.'"*Burgess v. Superior Court*, 2 Cal. 4th 1064, 1073 (1992) (citing *Marlene F., supra*, 48 Cal. 3d at 590). *See also McMahon v. Craig*, 176 Cal. App. 4th 222, 230 (2009). As already noted, Homecomings did not owe Plaintiffs any duty because their conduct did not exceed their conventional roles as a loan servicer.

In addition, under California law, damages may be recovered only for "serious emotional distress." *Molien v. Kaiser Foundation Hospitals*, 27 Cal. 3d 916, 923 (1980). While physical injury is no longer required, there must be "serious mental distress" such that a "reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Id.* at 927–28. As already noted, Plaintiffs' allegations of their injuries are insufficient. Thus, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' NIED claim **with leave to amend**.

///
///
///

### 4. Fraud

Five of Plaintiffs' causes of action sound in fraud: (1) intentional misrepresentation; (2) concealment; (3) false promise; (4) negligent misrepresentation; and (5) common law fraud. Rule 9(b) requires that "circumstances constituting fraud or mistake . . . be stated with particularity." Fed. R. Civ. P. 9(b). A plaintiff asserting fraud must allege facts supporting the following elements: (1) a misrepresentation, (2) knowledge of falsity (or scienter), (3) intent to defraud, i.e. to induce reliance, (4) justifiable reliance, and (5) resulting damage. *In re Estate of Young*, 160 Cal. App. 4th 62, 79 (2008) (quoting *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)). In order to satisfy Rule 9(b)'s particularity requirement, a plaintiff must state "the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir. 1988). When a plaintiff alleges fraud against multiple defendants, he or she "must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F. Supp. 2d 1158, 1163 (C.D. Cal. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F. Supp. 1427, 1433 (N.D. Cal. 1998)). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (internal quotations omitted).

Defendants assert that Plaintiffs' allegations fall short of the particularity requirement set forth in Rule 9(b). In particular, Defendants assert that Plaintiffs fail to identify what terms and conditions in which mortgage documents Homecomings allegedly breached. (*Defs.' Mot. to Dismiss* at 18:3–10.) Defendants further contend that Plaintiffs' allegations are directly contradicted by Plaintiffs' deed of trust. (*Id.*) The Court disagrees with Defendants' characterization of Plaintiffs' allegations. Here, Plaintiffs allege that upon acquiring the rights to service Plaintiffs' loan, Homecomings sent Plaintiffs a letter, which stated that the transfer of loan servicing to Homecomings "would not affect any other term or condition of the mortgage documents." (*Compl.* at ¶ 81.) Plaintiffs then assert that Homecomings proceeded to charge them inappropriate fees, including improperly assessed late fees,

property inspection fees and SpeedPay fees. Plaintiffs also allege that they were obligated to pay for force-placed insurance, even though they had insurance. They also assert that when they made their mortgage payments, portions of their payments were improperly allocated to the payment of fees rather than in the manner contemplated by the Deed of Trust. Plaintiffs refer to particular sections of the Mortgage Documents it claims Defendants violated, and attach the Mortgage Documents as an Exhibit to their Complaint. (*See Compl.* at ¶¶ 42, 53, 54, 60, 61.)

Plaintiffs assert that Homecomings knew about its practices, yet made the representations in the letter regardless. Plaintiffs also assert that Homecomings failed to respond to any of Plaintiffs' correspondence and repeatedly misdirected them to various departments at Homecomings. As a result of Homecomings' conduct, Plaintiffs assert that they continued to make payments even though they were not aware that the payments were being directed to fees rather than the interest and principal on their loan. The purpose of Rule 9(b) is to require plaintiffs to be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotations and citations omitted). Based on their allegations, the Court is satisfied that Plaintiffs have met their burden under Rule 9(b).

In addition to their argument that Plaintiffs have not satisfied the pleading requirements of Rule 9(b), Defendants assert defects with Plaintiffs' other fraud claims. First, Defendants assert that Plaintiffs' concealment claim fails because there were no alleged facts in existence that Defendants had a duty to disclose. (*Id.* at 18:12–23.) Defendants are correct that a fraud claim based on concealment exists only where the defendant failed to comply with a duty to disclose a particular fact to the injured party. *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612–13 (1992). A duty to disclose material facts arises where a confidential relationship exists or special circumstances require disclosure. *Cicone v. URS Corp.*, 183 Cal. App. 3d 194, 201 (1986). Plaintiffs respond to Defendants' argument by asserting that Defendants had statutory obligations that supply the required duty to disclose. (*Pls.' Opp'n* at 13:26–14:2.) The Court has already determined that Plaintiffs have failed to state a claim under these statutes. In addition, Plaintiffs reassert their argument that Defendants were operating under a fiduciary duty to Plaintiffs. (*Id.* at 14:2–4.) As already noted,

however, Defendants had no fiduciary duty to Plaintiffs. Without a duty to disclose, Defendants cannot be held liable for concealment. Thus, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' concealment claim **with prejudice**.

Defendants also contend that Plaintiffs' negligent misrepresentation claim is subject to dismissal because Plaintiffs' claim pertains to facts that came into existence after Homecomings made the alleged representations. Defendants argue that there was no fact in existence at the time that Homecomings misrepresented to Plaintiffs. (*Id.* at 4:1–8.) The elements of a cause of action for negligent misrepresentation are the same as those for a claim of fraud, with the exception that the defendant need not actually know the representation is false. Rather, to plead negligent misrepresentation, it is sufficient to allege that the defendant lacked reasonable grounds to believe the representation was true. *See B.L.M. v. Sabo & Deitsch*, 55 Cal. App. 4th 823, 834 (1997). It is well-established that the misrepresentation must be of a past or existing material fact. *See Id.*; *Glenn K. Jackson, Inc. v. Roe*, 273 F.3d 1192, 1201 n.2 (9th Cir. 2001); *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1128 (N.D. Cal. 2001). Plaintiffs assert that they have adequately pled their negligent misrepresentation claim because Homecomings "presumably was aware of its practices at the time it was assigned servicing of Plaintiffs' loans." (*Pls.' Opp'n* at 14:5–18.) Even accepting this fact as true, Plaintiffs' negligent misrepresentation claim is based on Homecomings's broken promise of future conduct, not a misrepresentation of a past or existing fact. Such claims are properly asserted as false promises, not negligent misrepresentation. *See Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991) (holding that a promise to immediately pay for repairs should they arise was not a past or existing fact). No matter how Plaintiffs try to characterize their claim, it is one of a false promise, not negligent misrepresentation. Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' negligent misrepresentation claim **with prejudice**.

### *5.    California's Unfair Competition Law*

Plaintiffs allege the Defendants' conduct violated California's Unfair Competition Law ("UCL"). (*Compl.* at ¶¶ 130–134.) California's UCL prohibits unlawful, unfair, and fraudulent business acts or practices. Cal. Bus. & Prof. Code § 17200 *et seq.*; *Wolfe v. State Farm Fire & Casualty Ins. Co.*, 46 Cal. App. 554, 558 (1996). The law is "sweeping, embracing anything that can

properly be called a business practice and at the same time is forbidden by law." *Cel-Tech. Communs., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

Defendants first argue that Plaintiffs fail to state a claim for violation of California's UCL because they have not pled their fraud causes of action with particularity. (*Defs.' Mot. to Dismiss* at 19:11–20.) As already noted, however, the Court has determined that Plaintiffs' allegations are sufficient to state claims under some of their fraud causes of action. Thus, Defendants' contention is without merit.

Second, Defendants contend that Plaintiffs lack standing to bring a cause of action under the UCL. (*Defs.' Mot. to Dismiss* at 19:21–20:16.) To establish standing under California's UCL, plaintiffs must allege that they suffered an injury in fact and lost money or property as a result of the alleged unfair competition. *Aron v. U-Haul Co. of California*, 143 Cal. App. 4th 796, 802 (2006). Defendants assert that Plaintiffs have not alleged that they suffered any loss, and even if they did, "they have recouped whatever loss they may have suffered by repurchasing the property after the trustee's sale–at a substantial discount." (*Defs.' Mot. to Dismiss* at 20:11–15.) The Court disagrees. Plaintiffs allege that they suffered an actual injury because they paid the fees Defendants improperly charged. (*Compl.* at ¶¶ 61–62.) This is sufficient to find that they have standing to pursue their UCL claim. Defendants' argument that Plaintiffs' injury was somehow rectified by their purchase of the property is not persuasive. The Court finds that Plaintiffs have alleged facts sufficient to confer standing to assert their UCL claim.

The Court notes that within their UCL cause of action, Plaintiffs refer to Cal. Bus. & Prof. Code § 17500. This statute, however, relates to false advertising for the sale of property or services. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1361 n.5 (2010). Courts have construed use of the term "advertising" in this statutory provision to mean "widespread promotional activities directed to the public at large." *Bank of the West v. Superior Court*, 2 Cal. 4th 1245, 1276–77 n.9 (1992). Here, Plaintiffs' allegations simply do not fall within the purview of this statutory provision. Thus, Plaintiffs' reliance on an alleged violation of this statute as a predicate act is without merit. Accordingly, the Court **DISMISSES** Plaintiffs' UCL claim to the extent it is based on Section 17500. The Court, however, **DENIES** Defendants' motion to dismiss Plaintiffs' UCL claim to the extent it

is based on fraud.[3]

### 6. *Consumer Legal Remedies Act*

Plaintiffs assert that Defendants' conduct violated California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"). (*Compl.* at ¶¶ 135–139.) The CLRA makes unlawful certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770. The CLRA defines a consumer as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d). A transaction is defined as "an agreement between a consumer and any other person, whether or not the agreement is a contract enforeceable by action, and includes the making of, and the performance pursuant to, that agreement." *Id.* at §1761(e). Finally, Section 1770(a) provides that the CLRA applies only to a transaction "intended to result or which results in the sale or lease of goods or services to any consumer."

Defendants contend that Plaintiffs' CLRA claim suffers from multiple defects which require dismissal. First, Defendants contend that Plaintiffs fail to identify which particular section Defendants violated. The Court agrees that this defect, alone, supports dismissal of Plaintiffs' claim. The Court notes that Plaintiffs flesh out their claims in their opposition, but for the purpose of a motion to dismiss, the Court, with a few limited exceptions that do not apply here, is limited to the allegations set forth in the Complaint. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001) ("As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'").

In light of Plaintiffs' citation to these other various provisions, however, the Court finds it necessary to address Defendants' second argument for dismissal in order to assess whether the Court

---

[3]In a footnote, Defendants assert that the Court should dismiss Plaintiffs' UCL claims against GMAC because UCL claims cannot be premised on vicarious liability. (*Defs.' Mot. to Dismiss* at 20 n. 11.) Plaintiffs do not respond to the argument, however, the Court finds that dismissal is not appropriate. Courts do permit claims to proceed against the principal for acts of its agents. *See People v. Toomery*, 157 Cal. App. 3d 1, 14 (1984) (holding corporation liable for violations of UCL by employees, but limiting individual liability to cases where individual directly participated in violations).

1  should give Plaintiffs leave to amend their CLRA claim. Defendants contend that the CLRA does not
2  apply to home mortgage loans. (*Defs.' Mot. to Dismiss* at 21:15–22:24.) Prior to 2009 and without any
3  guidance from the California Supreme Court, courts were split on whether the CLRA applied to home
4  mortgage loans. *Compare McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1488 (2006)
5  (declining to extend the protections of the CLRA to home mortgage loans) *with Jefferson v. Chase*
6  *Home Fin. LLC*, 2007 U.S. Dist. LEXIS 36298, *5–*11 (N.D. Cal. May 3, 2007) (finding that
7  servicing of a mortgage loan brought conduct within scope of CLRA). But in 2009, the California
8  Supreme Court decided a case that illuminated the issue. In *Fairbanks v. Superior Court*, the
9  California Supreme Court determined that life insurance was not covered by the CLRA because it was
10 not a good or service as defined by the Act. 46 Cal. 4th 56, 61 (2009). In that case, the court rejected
11 the plaintiff's argument that services provided in connection with the life insurance were services that
12 brought life insurance within the reach of the CLRA. *Id.* at 65. The Court reasoned,

> As [defendant] points out, ancillary services are provided by the sellers of virtually all intangible goods – investment securities, bank deposit accounts and loans, and so forth. The sellers of virtually all these intangible items assist prospective customers in selecting products that suit their needs, and they often provide additional customer services related to the maintenance, value, use redemption, resale, or repayment of the intangible item. Using the existence of these ancillary services to bring intangible goods within the coverage of the CLRA would defeat the apparent legislative intent in limiting the definition of "goods" to include only "tangible chattels."

18 *Id.* Since *Fairbanks,* courts have held that the CLRA is inapplicable to mortgage loans and the
19 ancillary services related to them. *See Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d
20 1002, 1015–17 (N.D. Cal. 2009); *Reynoso v. Paul Financial, LLC*, 2009 U.S. Dist. LEXIS 106555
21 (N.D. Cal. Nov. 16, 2009). As one district court explained, "*Fairbanks* indicates that loans are
22 intangible goods and that ancillary services provided in the sale of intangible goods do not bring these
23 goods within the coverage of the CLRA." *Consumer Solutions REO, LLC, supra*, 658 F. Supp. 2d at
24 1016–17.

25  Plaintiffs attempt to overcome the current state of the law by arguing that the services they
26 received and now complain about were "independent, stand alone services . . . separate and distinct
27 from any real property transaction." (*Pls.' Opp'n* at 17:2–5.) The Court finds this argument without
28 merit. Without their mortgage loan, Plaintiffs would never have been charged for these services; they

are, by definition, ancillary to the mortgage loan. For this reason, the Court **DISMISSES** Plaintiffs' CLRA claim **with prejudice**.

       7.  *Consumer Credit Reporting Agencies Act*, Cal. Civ. Code §§ 1785, et seq.

Plaintiffs allege that Defendants' conduct violated the Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1, *et seq.* ("CCRAA"). (*Compl.* at ¶¶ 140–146.) The CCRAA provides, "A person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal Civ. Code §1785.25(a).

Plaintiffs allege that they disputed the improper fees and that they never received notice of the default, and that as a result of this lack of notice, Defendant Homecomings "indirectly furnished or caused to be furnished, information it knew or should have known to be incomplete and inaccurate to the credit reporting agencies." (*Compl.* at ¶¶ 143–144.) Defendants assert that these allegations fail to state a claim. Specifically, Defendants contend that in spite of these allegations, Plaintiffs "do not even allege what Defendants allegedly reported to the consumer reporting agencies or why that information would be incomplete or inaccurate." (*Defs.' Mot. to Dismiss* at 23:3–11.) Even assuming that Plaintiffs' claim is based on the reported default, Defendants contend that Plaintiffs do not allege that they were not in default when the report was made. (*Id.* at 23:12–14.) Plaintiffs appear to concede that they do not know what Defendants reported to the credit reporting agencies. (*Pls.' Opp'n* at 17:17–18:8.) Plaintiffs merely assert that since they were unable to obtain a loan once they found out they were in default, it could only have been because their credit had been ruined by Defendants' improper reports to the credit reporting agencies. (*Id.*)

It is clear that Plaintiffs' CCRAA claim is based on pure speculation. While Plaintiffs adequately allege injury, they fail to allege what Defendants falsely reported any information such that Plaintiffs would be entitled to relief under the CCRAA. The improper charging of fees and Defendants' alleged failure to provide Plaintiffs with notice of their default do not appear to bear any connection to the CCRAA. Accordingly, the Court finds that Plaintiffs fail to state a claim for relief, and therefore **DISMISSES** their CCRAA claim. Although it is not clear to the Court whether Plaintiffs will be able to state a claim, the Court dismisses Plaintiffs' CCRAA claim **with leave to**

**amend**. The Court, however, advises Plaintiffs that simply alleging that Defendants improperly reported Plaintiffs' default would not cure the defect. As the Complaint now stands, Plaintiffs do not allege that they were not in default; they only contend that they were in default as a result of the misappropriation of their payments to the payment of fees rather than the loan itself. Even if Plaintiffs identified Defendants' report of their default as the basis for their CCRAA claim, without an allegation that Plaintiffs were not actually in default, Plaintiffs would still fail to state a claim.[4]

### 8. *Breach of Contract*

Plaintiffs' first cause of action is for breach of contract. (*Compl.* at ¶¶ 79–88.) To state a cause of action for breach of contract, the plaintiff must plead (1) the existence of a contract, (2) performance of the contract or excuse for nonperformance, (3) the defendant's breach of the contract, and (4) damages resulting from the breach. *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008).

Plaintiffs assert that Defendants breached their contract by imposing and collecting amount that were not due and owing by contract "including, but not limited to, property inspection fees, payment processing fees, late fees, force-placed insurance, and associated costs and charges." (*Id.* at ¶ 82.) Plaintiffs also assert that Defendants breached their contract by misapplying or failing to apply payments, imposing late fees and other charges that were not due. (*Id.* at ¶ 83.) Defendants contend that these allegations are "far too vague" to state a claim. (*Defs.' Mot. to Dismiss* at 24:3.) Defendants also contend that Homecomings had no contract with Plaintiffs. (*Id.* at 24:3–7.) Finally, Defendants contend that Plaintiffs fail to identify what provisions Defendants breached, and that they are "left guessing which provision in which contract plaintiffs contend they breached." (*Id.* at 24:8–13.)

The Court disagrees with Defendants' characterization of Plaintiffs' allegations. Plaintiffs clearly identify the contractual provisions and explain how Defendants breached them. The Court has noted that Plaintiffs' allegations sufficiently allege an agency relationship between GMAC and Homecomings. It is well-settled that agents cannot be held liable for breach of contract. *See, e.g.*,

---

[4]Periodically, Plaintiffs assert that they were not in default. (*See, e.g.*, *Compl.* at ¶ 83.) It is not entirely clear to the Court if Plaintiffs are claiming they were never actually in default or if they were no longer in default when they paid Homecomings the loan balance in full. Should Plaintiffs chose to amend their CCRAA claim, they would need to clarify this allegation.

*Filippo Industries v. Sun Ins. Co.* 74 Cal. App. 4th 1429, 1443 (1999) ("An agent cannot be held liable for breach of a duty which flows from a contract to which he is not a party."). *See also Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 576 (1973) (holding that a corporation hired to investigate and adjust claims for insurer could not be held liable for breach of insurer's contract because it was not a party to the contract). Because Plaintiffs allege that Homecomings was an agent for GMAC, Homecomings cannot be held liable for breach because it was not a party to the contract. Plaintiffs, however, identify the notice that Homecomings sent to Plaintiffs as their basis for the breach of contract claim against Homecomings. (*Compl.* at ¶ 81.) The Court shall defer the issue of whether the letter can serve as the basis of a contract to another day. But for the purposes of Defendants' motion to dismiss, the Court is satisfied that Plaintiffs' allegations against Homecomings are sufficient to state a claim for breach of contract. Based on these facts, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' breach of contract cause of action.

> 9. *Unjust Enrichment*

Finally, Plaintiffs set forth a claim for unjust enrichment. (*Compl.* at ¶¶ 155–161.) Under California law, "[t]he theory of unjust enrichment requires one who acquires a benefit which may not justly be retained, to return either the thing or its equivalent to the aggrieved party so as not to be unjustly enriched." *Otworth v. Southern Pac. Transp. Co.*, 166 Cal. App. 3d 452, 460 (1985) (citations omitted). Defendants assert that Plaintiffs' claim for unjust enrichment should be dismissed because Plaintiffs' claim is superfluous in light of their contract claim. (*Defs.' Reply* at 10:11–19.) Plaintiffs respond that a party is permitted to plead in the alternative, and that Plaintiffs might be entitled to quasi-contractual relief in the event that they are unable to establish an express contract. (*Pls.' Opp'n* at 19:1–8.) It is well-settled that plaintiffs are permitted to plead alternative theories of relief. Fed. R. Civ. P. 8(d)(2). Because the Court finds Defendants' request for dismissal premature, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' unjust enrichment claim.

///

///

///

## CONCLUSION

For the reasons stated herein, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss. (Doc. No. 3.) Plaintiffs may file their amended complaint addressing the defects as noted herein within *20 days* from the date of this Order. Defendants shall answer or otherwise respond to the amended complaint in accordance with the Federal Rules of Civil Procedure.

**IT IS SO ORDERED**.

DATED: August 23, 2010

Hon. Michael M. Anello
United States District Judge